Good morning, your honors. For the court, Neil Kingsley on behalf of Westgate Communications, the appellant in this case. There are two main issues that are before the court in the eyes of the appellant. Broadly, was due process violated in regard to Weavetail, Westgate's property rights? And second, did Chelan County admit to arbitrary and capricious conduct? Now, to understand the arbitrary and capricious element of this, it's important to understand how the permitting process works in this situation. Now, Chelan County improperly deprived Weavetail of the pre-approved use of land to build a telecommunications tower because it would not issue the necessary administrative use permit. And it did... Well, it did issue a permit, it just issued it with some delay and you're complaining about the delay. Well, your honor, it's important to note that the permit was not issued until a court ordered it to issue the permit. And even in those circumstances, it forced Weavetail to undergo this ridiculous regulatory gauntlet rather than actually following the process at the time for amending the zoning to the area. Chelan County's maps were derived from the maps of FEMA. And in this circumstance, it was stated that a portion of the land that was sought to be used here fell inside a frequently flooded overlay area. If that was the case, then Weavetail had to apply to FEMA to receive a conditional letter of map amendment, and then FEMA will issue the conditional letter of map amendment, and then finally issue a letter of map amendment finalizing after the improvements to the property have already been made. Now, in this case, Chelan County required that Weavetail provide the finalized letter of map amendment before we grant the administrative use permit. And this created a kind of administrative catch-22 in which the final letter of map amendment couldn't be issued until the property improvements were already made, but they couldn't get the permit to start making those improvements without the letter of map amendment. And the county admitted that this was well outside of the regular process that goes on for map amendments, and that it hasn't been used before or since then. And the county further appeared to admit it in its response briefing that there was a sort of administrative catch-22 issued here. Now, Chelan County didn't have because it had been pre-approved, so Weavetail had a justified expectation that they'd be able to use it for that interest. And in Washington, which has a vested rights doctrine that's different from... But your original applications were not complete. Well, Your Honor, I think that there is some dispute over that, but if we look at the timeline that was submitted as part of appellant's brief on page 5, by at least September 20th of 2005, the second application was submitted involving the conditional letter of map amendment. And you filed your first request for a map amendment to 1106.5 feet on December 29th, 2005. And that was after a concession by Weavetail to the county because there was some argument over what the actual foot height was going to be. Whether the conditional thing. So Weavetail said in the interest of getting this moving forward, we'll concede to that particular point and we'll issue it under that. And then you filed your second request for a map amendment to 1106.5. That is correct, Your Honor, yes. And that was ultimately resulted in a settlement and approval of the second application, right? After a land use petition was filed in district court and there was a court order forcing the county to do so, correct? And they amended the floodplain map. Yes, at that point they did, as they properly should have done so months beforehand. Now, because Weavetail had submitted the sufficient application with the CLOMA, they should have been able to proceed with the pre-approved use. And their delay here didn't serve any legitimate government purpose. Essentially, there appears to have been a lot of, I guess, political bad will. But the reason a CLOMA is not a LOMA is that it's conditional, right? That is correct, Your Honor. Okay, and so where is the property right that derives if it's only conditional? Because once a CLOMA has been issued as part of the process, when the pre-approved improvements are made to the property, essentially it's automatically amended on the county's mapping because a LOMA will issue. But a property right has to be certain to be a property right or at least vested. And the letter, the CLOMA, it's not just the title that makes it conditional. It says this document is not a final determination. It only provides our comment on the proposed project and so forth. So, how can you rely on something that is conditional and expressly not final and only a comment to create a vested right that entitles you to due process protection at that moment? I would suggest to the court, Your Honor, that even though the CLOMA is worded that way, as per the standard CLOMA issued, the process is once the proposed improvements are made, then the final letter of MAP amendment is issued. The reason that it's worded that particular way is because the improvements had not been made to the property. And if the improvements are never made to the property, then it will never be amended. Right. And so there will never be a property right that attaches. I mean, to say, well, we're going to comment on it. We think it sounds pretty good if you do X, Y, and Z. I don't see how that results right then and there in a property right that is protectable in the way that you're asking it to be. Because that's the only way that can be done, Your Honor, if the county relies on the maps. There's no other way to go about getting that amendment. There may not be any other way, but that doesn't necessarily mean that a vested right attaches at a certain point because you wanted to. I guess I'm having difficulty seeing why it's that point in time where you feel that there's a property right that attaches. Yes. There was a pre-approved use for this particular property for the construction of the telecommunications tower that Weavetel was trying to construct, which would indicate that once the permit was issued, which the permit should have been issued per the county's own policy upon reception of the CLOMA and the application, that Weavetel would have a vested right to it. And the reasons for denying it, even after that point, were just completely absurd and demonstrate that there is some element of arbitrariness and irrationality to the county's decisions. At that point, they... If you say that the county doesn't have broad discretion, how is it the county does not have broad discretion? I'm having trouble understanding your position on that. Certainly, Your Honor. Let me refer to my briefing really quickly here. So in this particular circumstance, through the FCC, the Federal Communications Commission, they had designated Weavetel to operate as a local telecommunications carrier for Chelan County. Now, the particular piece of property that was owned by Weavetel in this circumstance was pre-approved for usage for a low-impact utility, and that low-impact utility included telecommunications networks of the type that they were trying to construct. So because they owned a piece of property that was already pre-approved for usage of that particular issue, they had a vested right under the zoning that existed at the time to use it for that particular issue. I'm sorry, that particular use. And the fact that the county would not acknowledge the process that was supposed to be used to make that come about essentially caused Weavetel to suffer years' worth of regulatory issues. They lost an awful lot of money. And I think it eventually killed at least a part of the project because they weren't able to get it to go through at that particular time. Well, not every government delay equates to a due process violation, and the District Court, starting at page 23 of its opinion with paragraph 35, ends up saying that, look, even if your client had and was deprived of property interests, let's even assuming that you established the property right and the deprivation, nonetheless, the actions taken were taken in good faith and served a legitimate governmental purpose and were not such as to, you know, so egregious as to be a violation of due process. I'm obviously paraphrasing about three pages of specific conclusions. Why is that erroneous to the level that we have to, you know, this judge is very familiar with what happened and made a lot of findings. Why is that reversible error? I would suggest that that is a clear error given particularly the judicial admissions that were made by Chelan County in its briefing in this circumstance. Well, I don't see that either because I don't know what's unreasonable about the District Court's interpretation there either. The first alleged admission was taken out of context, at least that's what the District Court said, that you have to look at everything that was filed and it was clear that there was no concession that a CLOMA by itself sufficed. And the second was a mistake and was withdrawn. What's wrong with that? Well, Your Honor, I would suggest that the fact that the county's own witnesses admitted that this is never something that's happened before and that had WeaveTel moved at that one particular meeting to grant or to amend its application, it would have immediately been granted. And it relied on that for the purposes of trying to pass blame onto WeaveTel in saying, all these extra hearings that had to occur were in fact your fault and you could have prevented it if you did this. And then WeaveTel provided meeting notes in which they clearly moved. Well, to some extent that was true all along because the first application there were 19 deficiencies listed and I think your client contested one of them or something like that. I may have my numbers wrong. But those deficiencies were not the fault of the government. And I think we're in agreement on that, Your Honor. The application that most of this is premised on is starting at the second application. We acknowledge the first application filed in March of 2005 had deficiencies that needed to be corrected before should be granted. So the second application, the one that you're arguing that the district court committed, I think it's a clear error because it refused to hold the county to the false statement made by the county official in the affidavit. It's one of your claims? I think it's a clear error because the fact that they admitted to it and were using to try to benefit themselves has the effect of a judicial admission and therefore should have removed that fact from contention. At that point the court should have found that that was what the fact was because that's what the county admitted that it was. I thought that the district court found that the county made effort to correct the statement and that the district court found that it wasn't an intentional falsehood. It wasn't intentional and it wasn't a the county moved to correct the statement after we pointed out that that wasn't a mission and at that point they tried to backtrack on what they had said. At this point, Your Honor, though I would like to reserve the remaining minute and 19 seconds. You may do that. Thank you. Thank you. Thank you, Your Honors. May it please the court and counsel. Heather Yeakley here on behalf of I apologize for my Siri outburst. I am trying to go paperless and apparently I haven't mastered the iPad yet so I apologize for that when I was sitting in the back. I'd like to go ahead and just address some of the questions that the court raised to plaintiff's counsel and offer my response to that and then if the court has other questions obviously I will take those. The issue with the pointed out is absolutely correct. The CLOMA is a conditional letter. It doesn't do anything and it is still correct. Plaintiff correctly cites it but interprets it differently or incorrectly from the county's position that it does create a catch-22. But this catch-22 was acknowledged and explained to Weavetail at the very beginning. So back in 2005, the conditional letter doesn't amend the FEMA maps. There has to be a final decision or the LOMER which is the letter of map amendment. So the county doesn't dispute that they rely on the FEMA maps. That's the distinction here that plaintiff Weavetail doesn't quite seem to reach the same conclusion on as the county does. So that final determination had to be made. So the planning department says okay what can we do since we can't make this change because we don't have a letter of map amendment. Okay maybe we can change the floodplain. This was discussed and it's in the excerpts of the record. So if I understand your position it is that there were two alternative routes to getting the approval. Your Honor there's actually more than two. In other words there's three. They could have done the LOMER which they couldn't get until they built it so that one's out. They could have complied with the shoreline permits under the Chelan County Shoreline Master Program and there's also the Shoreline Master Act and I won't pretend to be an expert in either one of those but the planning department individuals who dealt with Weavetail were very familiar with them. They dealt with them on a regular basis. So that would not have required the CLOMA and LOMER. That is correct Your Honor. Or they could have because for whatever reason Weavetail didn't seem they seemed reluctant or it seemed reluctant to apply for the shoreline permits. They could have applied to have the legislative decision done which they did do in December of 2005. That was brought up to Weavetail early on in the process. So they had three different options and they didn't take any of the three. Chelan County never said yeah this isn't an unusual situation. This was also an unusual piece of property. So there wasn't Well you know it does the one concern sort of overarching all of this that I have is it sounds like today at least they're taking the position that anything before September 20, 2005 sort of doesn't count. It was a false start. But between the second AUP application September 20, 2005 and the ultimate approval is a little more than a year which seems like a long time. Your Honor and so and there was some dispute along the way I guess between the parties. What are we to make of that? Well first let me address that in two ways. First as a matter of law as I believe the court somewhat alluded to delay doesn't create any right. The property right becomes a right once the permit has been issued and the cases are very clear on that. So your view is that even an unreasonable delay before a property right attaches is not a due process violation because there's no property right yet? Because the federal courts rely on state law under Washington it is the vested rights doctrine and the vested rights doctrine does say that there has to be that right in existence first. So yes. Think about this approach. There are no cases on it either way but suppose I think you a county virtually admits that the applicant Weaftel was put in the Catch-22. At the very least was subject to a severe delay. Suppose the only reason they can't assert a property right is because they're in a Catch-22 created by the county so that's a substitute for a property right. What's wrong with that? Well two things there your Honor. First the Catch-22 was not was not created by Chelan County alone. Weaftel as we earlier discussed had numerous options available to it that it did not want to follow through with. That did not have a Catch-22 in that? Yes your Honor. And the reality of those other options were that the September 2005 permit which was the second permit was still subject to numerous conditions. So in other words the conditions have to be met before an AUP can be issued. Weaftel indicated in its oral argument that an AUP is a pre-approved right. It's not a pre-approved right. I don't have the specific trial testimony in the report of the proceedings where that was discussed by both Mr. Frampton and Mr. Tate but if you look at excerpts of the record page 438 that is a an affidavit of Brian Frampton and he explains that and says simply because an individual is applying for an AUP they must still comply with all applicable local state and federal regulations. They're not designed for fast tracking and fast tracking excuse me and do not exempt the permittee for meeting any and all applicable regulations. So in response to your question your Honor that there was not simply this issue with FEMA that was causing the delay. It's it's replete in both the report of the proceedings at trial as well as the excerpts of the record that there were numerous problems with this and numerous changes to the project which as the planners testified to become problematic because okay you say there's not going to be any storage and then all of a sudden we receive a site plan and it's got a 500 gallon storage tank on it. All of these issues have to be addressed before the permit can be issued. Well I guess that's sort of what Justine was asking along the lines of what I was inquiring about and maybe you answered that right now but what harm would the county have suffered if it had granted Westgate's initial request to amend the county's flood plain map so that the administrative use permit could have been issued. And your Honor that's that's not that's a great question and the harm that the county would have faced is because it's not allowed to have on that by code and that code is 11 I'm sorry let me make sure 1102.005 and that's at page 574 of the record and it specifically states that no county official or employee shall issue a permit for a conditional use or variance or give any other authorization for any use that would not be in compliance. No action taken by any elected or appointed official of the county shall validate any such work permit or other authorization. So again there's no dispute that this was a very contested project. I don't know if your honors are familiar with the Stahikon location. Stahikon is a very very remote location in located within the county. You can only get to it by boat. The individuals who live there reside in Stahikon for very particular reasons. Many of that much of that has to do with the fact that they don't want to be connected. So there was opposition to the cell tower. That's not a disputed fact. It creates a catch 22 for the county itself. If you ignore this provision which I just read into the record which is Chelan County Code 1102.005 you now have created a lawsuit. We've told gets what they want. But now you've created a lawsuit by the residents against the county for issuing a permit which the county had no right to issue. So the planners are required to follow those codes and the code is clear that we can't issue one until the conditions are met. And that's also set out at Chelan County Code 1102.030 which states whenever the party exists congruent to the title the most restrictive or that imposing the higher standards shall govern. So plaintiff argues that the CLOMA somehow allows them to leapfrog the other conditions. The CLOMA doesn't resolve the issue of the floodplain which means it's still subject to the Shoreline Master Act and the Shoreline Management Plan. So in a sense what you're saying not saying directly but the fact that there had to be a lawsuit and a settlement and a court order is in a sense to the political benefit of the county because it insulates their decision from residents saying you did this voluntarily. But I'm not sure that makes any difference to our analysis. And the reason I'm hesitating, Your Honor, is because to be honest I don't know that I know the answer to that and I don't want to misrepresent the counties. It's pure speculation on my part. You may be correct. But I think it's important that raises another issue that I wanted to bring up. There's two quote areas of delay if you will. And quite frankly the county doesn't there is no delay in this because if you look at the timing of the Shoreline Master Program permits those are those are easily 90 to 100 days. Those are allowed under the code. So if you if you look at that and again this goes back to the three ways that you could have permitted this project. We're still well within an allowable window. It's just that most people don't try and apologize for the life of me. I cannot recall his name. It was not Neil Beaton but it was the the actual engineer expert. So let's put aside the planning department timeline and go to the county commissioners because I think that actually more addresses your question. Again we've had several options with requests of that back in 2005. The record is clear that the county commissioners had no idea that any of this was going on until the matter was brought to them at hearing. And that was in February of 2006. At that point in time we've tell could have filed a loop following the February of 2006 for whatever reason it chose not to. A loop is a land use petition action. And that's the action that you were referring to. Right. And then for whatever reason I don't believe that it's in the record and if it is I don't have a recollection of it. They filed that in June of 2006. Correct. Following the second one which is where the commissioner said it doesn't meet the straight face test. But in that case there was no action and I know this is splitting hairs but it's it's a reality under Robert's rules. There was no action taken by the board because it failed for lack of a second. So in terms of why they did this the only evidence in the record is we have a public who has established evidence at those hearings that this property has flooded above 1108.24. It's a health and safety concern which is a valid. So there was testimony to that. That was Commissioner Walters Your Honor. And I'm sorry I don't. I have it. OK. 638 and 639. In terms of timing that would be about right in terms of the page numbers. So that was that was Commissioner Walters stated reason for saying no I you know I'm not going to vote on this. It failed for lack of a second. There was no denial of it. And again splitting hairs. But that's the reality of it. And the other thing that's important to note is that we've could have filed and the statute is escaping me but could have filed under the Telecommunications Act with the federal court immediately. In other words when they didn't get their first A.U.P. issued in July of 2005 they could have filed with the federal court for relief under that. So did this process take a significant amount of time. In WeaveTel's eyes it did. When you look at the actual codes in the statutes or the county codes in the state statutes that apply were they outside a realm of reasonableness. Absolutely not. And the record is also very very clear that the planners took extraordinary efforts quite frankly to assist WeaveTel in getting its permit. Frampton and Pate both testified that they made exceptions by allowing a second permit to be filed after the first one which they acknowledged was not complete in two months. The code says a year. I recognize I'm out of time so. You may sum up if you have any last comment. Very briefly your honors you did address the issue with the alleged admissions. Brian Frampton simply made a mistake. The trial court was correct when it said you know what he made a mistake he acknowledged it and I judged his credibility which is his effort. There's simply no grounds for overturning this because of the wide latitude that the district court has given in terms of the record. Thank you your honors. Thank you. Mr. Kingsley. Thank you your honor. Just a few brief points. The first I would point out is that the conditions that are being argued here only exist because part of the property was designated on a flood plain area. If it was removed from that particular designation then a lot of the conditions that were being disputed through the permitting process and through the other I guess political fights that were going on during this time, they would have been removed from contention at that point which is why Weavetel has been arguing that upon issuance of the CLOMA they should have been able to go ahead with their administrative use permit. A second key number is 49 days. 49 days is the amount of time that it took Chelan County to issue an administrative use permit after it was ordered by the court upon the completion and I guess settlement of the land use petition action filed by Weavetel. Now the county appears to be arguing right now that Weavetel incurred damages itself because it decided not to sue the county earlier and this seems like a kind of a poor policy and kind of pushes the blame aside from the fact that the county was not participating in this process rationally in these circumstances. And I think that given the facts on record it's fairly clear that their actions were at least to some degree and not those of the planners but those of the commissioners and the people, the political power, the power to issue these permits in these circumstances were arbitrary and capricious and I believe I am out of time. You are. Thank you very much for your arguments. We appreciate both counsel's helpful arguments in this case. The case is submitted and we will stand adjourned.
judges: Tashima, Graber, Murguia